```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 BHOPAUL RAMDEO,

                 Plaintiff,              MEMORANDUM & ORDER
                                           20-CV-5150(EK)

         -against-

 COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Bhopaul Ramdeo challenges the Social Security Administration's denial of his claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Ramdeo's motion.

### I. Background

**A. Procedural Background**

        In October 2018, Ramdeo applied for disability benefits, alleging a disability onset date of October 17, 2018. Administrative Tr. ("Tr.") 11, 171-74, 212, ECF Nos. 10, 13. The agency denied his claim, initially and on reconsideration, after which Ramdeo requested a hearing. *Id.* at 55-59, 70-74, 82-83. On April 2, 2020, an administrative law judge ("ALJ") held a hearing on Ramdeo's claim, at which only Ramdeo and a

vocational expert testified. *Id.* at 412-39. The ALJ, Ifeoma N. Iwuamadi, concluded that Ramdeo was not disabled and therefore not entitled to disability benefits. *Id.* at 11-19. The agency's Appeals Council denied Ramdeo's request for review of the ALJ's decision, rendering it final. *Id.* at 1–7. Ramdeo timely sought review of that decision in this Court. ECF No. 1.

**B. The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the ALJ identifies such an impairment, then at step three, he must determine whether it meets or equals one of the impairments

2

listed in Appendix 1 of the regulations — the "Listed Impairments."  *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  *Id.* § 404.1520(a)(4)(iii).

ALJ Iwuamadi determined that Ramdeo had not engaged in substantial gainful activity since October 17, 2018, the alleged onset date.  Tr. 13.  The ALJ also determined that Ramdeo suffered from the following severe impairments: asthma; "coronary artery disease status post-pacemaker and mitral valve surgery," and obesity.  *Id.*  The ALJ concluded, however, that none of these impairments rose to the level of a Listed Impairment.  *Id.* at 14.  The ALJ also found that Ramdeo had arthritis in his right knee, but that this impairment was not severe.  *Id.* at 13.

When the ALJ finds that a claimant has severe impairments that do not meet the requirements of the Listings, he must determine the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4)(iv), which is the most he can do in a work setting notwithstanding his limitations.  *Id.* § 404.1545(a)(1).  The ALJ concluded here that Ramdeo had the RFC to perform "light work," with certain limitations.  Tr. 14.  He could "occasionally" kneel, crouch, crawl, and climb ramps and stairs.  *Id.*  However, the ALJ concluded that Ramdeo could not climb ladders, ropes, or scaffolds; work at unprotected

3

heights or near moving mechanical parts; or operate a motor vehicle.  *Id.*  The ALJ also concluded Ramdeo must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants.  *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv), (f).  Here, the ALJ found that Ramdeo could perform his past work as a mail clerk.  Tr. 18.  As a result, the ALJ did not reach step five, which considers whether the claimant can perform jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v), (g).  Given that determination, the ALJ concluded that Ramdeo was not disabled.  Tr. 18.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v.*

4

*Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[1] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion

Ramdeo presents two issues on appeal. First, he asserts that the ALJ failed to properly evaluate the opinions of Ramdeo's treating physician, Dr. Rasheed Jafar, M.D., and of consultative examiner Dr. Syada Asad, M.D. *See* Mem. of L. in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 1, ECF No. 14-1. The ALJ rejected as "not persuasive" Dr. Jafar's opinions that Ramdeo could sit, stand and walk less than 2 hours and would require rest for a two-hour period during his 8-hour workday; could only occasionally lift up to five pounds; would require daily unscheduled breaks of at least two hours, and would be off task more than 25%; and would be incapable of even a low stress job. Tr. 17. She similarly rejected Dr. Asad's opinions that Ramdeo "had moderate limitations for squatting, kneeling, walking and standing for a long period of time" and that "he should avoid activities requiring mild to moderate exertion." *Id.* at 16. As a result, Ramdeo contends, the ALJ's RFC determination was not supported by substantial evidence.

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

*See* Pl. Mem. 1.  Second, Ramdeo further contends that the ALJ failed to properly evaluate Ramdeo's subjective complaints of pain and dizziness.  *Id.* at 17–18.

A.   **Revised Regulations for Evaluating Medical Opinions**

For claims filed after March 27, 2017 (like Ramdeo's), the "treating physician rule" no longer applies.  *See Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022); 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").[2] Thus, the opinion of a treating physician is no longer presumptively entitled to controlling weight.  Instead, all medical opinions are assessed against the same set of criteria: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors," including familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1)-(5).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain

---

[2] The regulation that contained the treating physician rule was repealed on January 18, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (effective March 27, 2017).

6

his consideration of them. *Id.* The regulation does not explicitly require the ALJ to explain his consideration of the remaining factors. *Id.* In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

**B.   Medical Opinions and the ALJ's Evaluation**

In formulating her RFC determination, the ALJ considered medical opinions provided by four doctors: Dr. Jafar, Ramdeo's treating cardiologist; Dr. Asad, a consultative examiner; Dr. C. Levit, M.D., a medical consultant who reviewed the record; and Dr. S. Powell, M.D., another medical consultant who affirmed Dr. Levit's prior assessment on reconsideration review. *See* Tr. 16-17. The ALJ found the submissions of Drs. Jafar and Asad "not persuasive," and found those of Drs. Levit and Powell persuasive. *Id.* Based on that assessment, the ALJ determined that Ramdeo had an RFC that allowed him to perform his past work. *Id.* at 18.

Dr. Jafar submitted a preprinted "Cardiac Medical Source Statement" questionnaire he completed on February 25, 2020. *Id.* at 407–10. Dr. Jafar, who indicated having treated Ramdeo between September 2006 and February 2020, provided

7

narrative reports of Ramdeo's rheumatic heart disease, status post mitral valve prosthesis, atrial fibrillation, and cerebrovascular accident. *Id.* at 407. Dr. Jafar checked boxes indicating these diagnoses were based on "clinical signs / findings" of fatigue, irregular heartbeat, arrhythmia, and rapid weight gain. *Id.* His checklist further reported that Ramdeo had experienced no acute cardiac events, was obese, and that his obesity caused (in combination with other challenges) greater limitations than the effects of each impairment considered separately. *Id.* Based on these conditions, Jafar assessed marked restrictions on Ramdeo's ability to work, including that in an eight-hour working day, Ramdeo could sit only for "about 2 hours" and stand or walk for "less than 2 hours." *Id.* Dr. Jafar also opined that Ramdeo would require 2 hours of rest during a working day. *Id.* at 408.

Dr. Jafar's checklist also indicated that Ramdeo could spend less than one-third of the working day carrying one to five pounds. *Id.* Dr. Jafar added that Ramdeo's symptoms would "likely increase" if he "were placed in a competitive work environment," such that Ramdeo would suffer rapid atrial fibrillation and shortness of breath. *Id.* Dr. Jafar continued that Ramdeo would likely be "off task" 25% or more of the day, and absent from work more than three times a month because of his impairments or treatment. *Id.* Dr. Jafar concluded that

8

Ramdeo was "incapable of even 'low stress' jobs." *Id.* Finally, Dr. Jafar stated that Ramdeo's "condition existed and persisted with such restrictions" since September of 2006 — twelve years before Ramdeo's alleged onset date. *Id.* at 409.

The record also contained an Internal Medicine Examination report from a consultative physician, Dr. Asad. *Id.* at 370. Asad examined Ramdeo in person in February of 2019, on referral from the Division of Disability Determination. *Id.* She noted that Ramdeo had had mitral valve surgery in 2001, had a pacemaker placed in 2007, and has had asthma since 2018 and arthritis in the knee for "a couple of years." *Id.* Dr. Asad found Ramdeo's heart had a regular rhythm and no murmur, gallop, or audible rub. *Id.* at 371. She also found that Ramdeo generally had full range of motion except for in his right knee. *Id.* at 371-72. Ultimately, Dr. Asad concluded that Ramdeo had "moderate limitations for squatting, kneeling, walking, and standing for a long period of time," but "no limitations for lifting, carrying, or pushing heavy objects." *Id.* at 372. She further opined that Ramdeo should "avoid activities requiring mild to moderate exertion due to the history of cardiac problem." *Id.*

The ALJ also received a Disability Determination Explanation report from Dr. Levit, an internist who served as a

9

state agency medical consultant. *Id.* at 34-42; *see id.* at 17.[3] In February of 2019, following a review of Ramdeo's medical record, Dr. Levit opined that Ramdeo could lift or carry twenty pounds occasionally and ten pounds frequently, and could stand, walk, or sit for about six hours in an eight-hour working day. *Id.* at 39. Dr. Levit further opined that Ramdeo could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and balance, stoop, kneel, crouch, and crawl. *Id.* Dr. Levit also stated that Ramdeo should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 40.

In August of 2019, Dr. Powell provided a second Disability Determination Explanation report that affirmed Dr. Levit's. *Id.* at 50.

The ALJ appropriately considered Dr. Levit's and Dr. Powell's Disability Determination Explanation reports in formulating Ramdeo's RFC. "As a general matter, an ALJ is entitled to rely upon the opinions of both examining and non-examining . . . medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459,

---

[3] The designation "19" next to Dr. Levit's name in the Disability Determination Explanation report signifies that Levit is a specialist in internal medicine. *See* Program Operations Manual System DI 24501.004 Medical Specialty Codes, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424501004 (last visited Oct. 19, 2023) (listing medical specialty code "19" as "Internal Medicine").

2021 WL 4480656, at *3 n.5 (E.D.N.Y. Sept. 30, 2021); *see also* 20 C.F.R. § 404.1513(a)(5).

Ramdeo argues that the ALJ's RFC determination, which was consistent with Ramdeo's performing his past work, was deficient because the ALJ discounted the opinions of Drs. Jafar and Asad. *See* Pl. Mem. 7-8. These doctors opined, respectively, that Ramdeo could not perform even a "low stress" job, and that Ramdeo should avoid mild to moderate exertion. *See* Tr. 372, 408. But a review of the record evidence demonstrates that the ALJ properly considered the opinions of Drs. Jafar and Asad, and her conclusions regarding Ramdeo's limitations were supported by substantial evidence.

First, ALJ Iwuamadi properly evaluated Dr. Jafar's Cardiac Medical Source Statement questionnaire and did not err in finding it not persuasive. The ALJ recognized that Dr. Jafar treated Ramdeo "for an extended period." Tr. 17. However, she found that the record did not support Dr. Jafar's opinions that Ramdeo could sit, stand, and walk less than 2 hours and would require rest for a two-hour period during his 8-hour workday; could only occasionally lift up to five pounds; would require daily unscheduled breaks of at least two hours, and would be off task more than 25%; and is incapable of even a low stress job. *Id.* In particular, the ALJ observed that Ramdeo's "condition generally ha[d] stabilized a lot" over the course of Dr. Jafar's

11

treatment. *Id.* Specifically, Ramdeo had "normal test results" in examinations by multiple doctors, "such as normal ejection fraction, normal chest x-rays and only a mild knee condition." *Id.* Yet Dr. Jafar's questionnaire indicated that Ramdeo had the same "restrictions" from September of 2006 through the beginning of 2020. *See id.* at 409. Moreover, Ramdeo did not cease his previous work until 2018. *See id.* at 212. Thus, from 2006 to 2018, Ramdeo was, by definition, not disabled. *See Surgeon v. Comm'r of Soc. Sec.*, 190 F. App'x 37, 39 (2d Cir. 2006) (disability requires that a claimant be "unable to do his previous work"). Accordingly, the ALJ properly rejected Dr. Jafar's (unexplained) suggestion that restrictions that were not disabling from 2006 to 2018 somehow became disabling thereafter.

An ALJ need not give controlling weight to the submissions of a treating physicians that are "internally inconsistent." *Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 423 (S.D.N.Y. 2016). For example, in *Heitz*, the court approved an ALJ's discounting of a treating physician's opinion that the claimant "could only stand or walk for two hours at a time" based on the claimant's "shortness of breath," where the physician's accompanying notes "suggested only sporadic complaints of shortness of breath." *See id.* Likewise, here, the ALJ properly discounted Dr. Jafar's suggestion that Ramdeo's condition did not change, but his ability to work did.

Even limiting Dr. Jafar's opinions to the time during which Ramdeo claims disability, Dr. Jafar's questionnaire answers, as the ALJ correctly noted, were contradicted by objective medical evidence, including Dr. Jafar's own treatment notes, which repeatedly reflected normal examination findings during the relevant period. *See id.* at 17, 396-99. For example, Dr. Jafar's files include a letter from Dr. Lawrence J. Kanner, M.D. to Dr. Jafar, reporting to Dr. Jafar that on April 11, 2019, Ramdeo "feels well without [pacemaker] device related complaints," although he experiences "occasional palp[itation]s." *Id.* at 395. When the treating physician rule applied, the Second Circuit recognized that an ALJ could nevertheless properly discount a treating physician's opinions for being "inconsistent with the moderate findings reflected in the doctors' notes." *Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019); *see also* 20 C.F.R. § 404.1520c(c)(2).

The nature of Dr. Jafar's submission further supports the ALJ's decision to discount it. While Dr. Jafar provided some explanation as to the clinical findings underpinning his opinions, his assessment primarily took the form of a checkbox and fill-in-the-blank questionnaire. Tr. 407-10. As numerous courts have observed, such standardized checkbox forms have "limited value" and are "'only marginally useful for purposes of creating a meaningful and reviewable factual record.'" *Sabater*

13

*v. Colvin*, No. 12-CV-4594, 2016 WL 1047080, at *5 n.6 (S.D.N.Y. Mar. 10, 2016) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004)); *see, e.g.*, *Llorens-Feliciano v. Astrue*, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Second, ALJ Iwuamadi similarly did not err in discounting Dr. Asad's Internal Medicine Examination report based on its internal contradictions (among other things). On one hand, Dr. Asad reported essentially normal examination findings except for a limited range of motion in one knee, and she opined that Ramdeo had "no limitations for lifting, carrying, or pushing heavy objects." Tr. 372. Specifically, she found that Ramdeo had a normal gait, was able to walk on heels and toes without difficulty, had a normal stance, could "squat full" and used no assistive devices. *Id.* at 371. On the other hand, she also opined that Ramdeo had "moderate limitations for squatting, kneeling, walking, and standing for a long period of time," and should "avoid activities requiring mild to moderate exertion due to the history of cardiac problem." *Id.* The ALJ concluded that these "moderate limitations" did not follow from the largely normal examination findings. Tr. 16. Furthermore, the ALJ observed that Dr. Asad's opinion that Ramdeo could move heavy objects without

14

limitation contradicted her recommendation that Ramdeo avoid mild to moderate exertion — such as moving heavy objects. *Id.* As with treating physicians' opinions, an ALJ may properly reject consultative examiner's opinions based on "internal inconsistencies." *Platt v. Commissioner of Social Security*, 588 F. Supp. 3d 412, 421 (S.D.N.Y. 2022) (recognizing contradiction between opinion claimant could "perform[] complex work" yet had an "impaired memory").

The ALJ's treatment of the medical opinions in this case is not a basis for remand. Rather, the ALJ properly discussed the "most important factors" of supportability and consistency for each opinion, *see* 20 C.F.R. § 404.1520c(b)(2), and crafted an RFC in light of the evidence as a whole. Where opinions conflicted, the ALJ was entitled to "choose between [the] properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see also Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-7910, 2021 WL 4909955, at *9 (S.D.N.Y. Oct. 21, 2021) (upholding ALJ's determination which "noted and discussed" conflicting medical evidence and "arrived at a decision based on the record as a whole").

**C. Ramdeo's Subjective Complaints**

Ramdeo's second contention here is that the ALJ failed to properly evaluate Ramdeo's subjective complaints. Pl. Mem. 1. At his hearing, Ramdeo testified to "a lot of dizziness" and

15

"a lot of headaches," in episodes of "two hours, or more" "three, four times a week." Tr. 423. He also testified to pain in his right knee and shoulder. *Id.* at 424. He testified that he cannot stand long enough to cook or wash more than "one or two cups." *Id.* at 426. Though he alleges his disability onset date was in October of 2018, at the hearing, he identified his 2001 and 2007 surgeries as the point at which he lost his capacity to perform these tasks. *See id.* at 427.

The ALJ expressly discussed Ramdeo's testimony to headaches, dizziness, shortness of breath, and various functional limitations. Tr. 15. Nevertheless, she concluded that Ramdeo's limitations "are not to the degree as alleged, and are fully accommodated by the residual functional capacity" determination the ALJ reached. *Id.* at 18.

This was not error. The ALJ was required to incorporate only limitations that she found consistent with the record as a whole and supported by substantial evidence. *See* 20 C.F.R. § 404.1545; *see, e.g.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (ALJ properly discounted subjective complaints based on prescribed "conservative treatment" regimen); *Femminella v. Comm'r of Soc. Sec.*, 524 F. Supp. 3d 20, 22 (E.D.N.Y. 2021) (ALJ properly discounted complaints based on gaps in medical treatment and collecting cases). Here, as discussed, the record – and, indeed, Ramdeo's own testimony –

16

supports the conclusion that Ramdeo's impairments predated his claimed onset of disability by as much as a decade, a period during which Ramdeo was performing his previous work and was accordingly not disabled. *See* Tr. 409 (Dr. Jafar's opinion of a September 2006 onset to Ramdeo's restrictions); *id.* at 427 (Ramdeo's testimony that his restrictions followed his 2001 and 2007 surgeries).

The record does indicate an additional surgery that Ramdeo did not testify to, in February 2016, when he had the battery of his pacemaker changed. Tr. 354. But while that surgery was closer in time to Ramdeo's alleged onset date, he continued to perform his previous work for another two and a half years.

Ultimately, "whether there is substantial evidence supporting [Ramdeo's] view is not the question here; rather, [the court] must [only] decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, even if "the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). That is the case here.

17

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Ramdeo's motion. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                                /s/ Eric Komitee  
                                                ERIC KOMITEE  
                                                United States District Judge

Dated:    October 19, 2023  
            Brooklyn, New York